UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEMETRICE DEXTER,

                Petitioner,

-vs-                                            Case No. 8:09-cv-2478-T-33TBM

SECRETARY, DEPT. OF CORRECTIONS,

                Respondent.
_____/

## **ORDER**

Before this Court is a 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Demetrice Dexter, a Florida prisoner. The petition attacks Dexter's convictions for aggravated assault on a law enforcement officer, resisting arrest with violence, driving while license suspended (habitual traffic offender), fleeing or attempting to elude an officer, and leaving the scene of a crash, rendered in the Twelfth Judicial Circuit of Florida in Case No. 04-CF-1414.

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

### BACKGROUND

On February 24, 2005, Dexter was charged by a five-count Second Amended Information with Aggravated Assault on a Law Enforcement Officer (Count One), Resisting Arrest with Violence (Count Two), Driving While License Suspended (habitual traffic offender), (Count Three), Fleeing or Attempting to Elude an Officer (Count Four), and Leaving the Scene of a Crash (Count Five). (Exh 20: Vol. 1: R 47-50).[1]

---

[1] Respondent filed the three-volume record on direct appeal as Exhibit 20.

The case proceeded to trial before the Honorable Peter A. Dubensky, Circuit Judge. Dexter was represented by Attorney R. Tracy Lee, Esquire. The jury found Dexter guilty of all five counts as charged. (Exh 20: Vol. 1: R 76-77). On February 25, 2005, immediately after the jury rendered its verdict, the court adjudicated Dexter guilty and sentenced him to fifteen years in prison as a prison releasee reoffender for aggravated assault on a law enforcement officer, a concurrent five years in prison as a prison releasee reoffender for resisting an officer with violence, a concurrent five years in prison for driving with a suspended license, and to time served for the misdemeanors. (Exh 20: Vol. 1: R 86-99).

Given that Dexter accepts the Respondent's procedural history (See Dexter's Reply, Doc. 20, at p. 1), a recitation of the procedural history of Dexter's criminal conviction is unnecessary. The issues are fully briefed and the case is ripe for decision. The record is fully developed and the claims of the petition raise issues of law, not issues of fact. *See Breedlove v. Moore*, 279 F.23 952, 959 (11th Cir. 2002).

## STANDARDS OF REVIEW

## THE AEDPA STANDARD

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough

that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## EVIDENTIARY HEARING

The state trial court conducted an evidentiary hearing on Dexter's postconviction claims; he has never alleged otherwise. The state trial court's findings are "presumed to be correct" (28 U.S. C. 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . . ."(28 U.S.C. § 2254(d)(2)). There are no claims in the habeas petition which permit further factual development. No federal evidentiary hearing is warranted on Dexter's petition.

## DEXTER'S ABANDONMENT OF ALL GROUNDS EXCEPT NINE AND TEN

Dexter raised eleven grounds in his 28 U.S.C. § 2254 petition for writ of habeas corpus. In his reply, he does not mention ground eleven, but he does agree that all grounds except grounds nine and ten are unexhausted. However, Dexter discussed a different ground ten in his reply from the one that he raised in his federal petition.

**In his federal petition, ground ten reads**:

Petitioner denied 6th Amend. Right To Effective Counsel: Failure To Move for a Continuance.

> Appointed only 11 days prior to trial rendered counsel unable to investigate Petitioner's prior; prepare defense witnesses; interview & call eye witness Ms. Thomas; or secure police training manuel [sic] on use of force when danger is imminent. therefore had counsel moved for a continuance to allow himself to prepare for trial, the outcome of the proceeding would have been different.

(Petition, Doc. 1, at p. 9).

**In his reply, ground ten reads**:

Counsel was ineffective for Opening the Door To the Exact nature of Petitioner's Prior Conviction Which Did Prejudice Petitioner's Defense.

(Petitioner's Reply, Doc. 20, at p. 13).

Because Dexter did not raise a claim that counsel was ineffective for opening the door to the exact nature of his prior conviction which prejudiced Petitioner's defense in his federal petition filed in this Court, this Court considers the claim abandoned. Even if it were not abandoned, however, this claim does not warrant habeas corpus relief. The state trial court entered a lengthy post-evidentiary hearing order denying relief on this claim. (See Exhibit 13, Order Denying Motion for Post Conviction Relief Following a Limited Evidentiary hearing at pp. 8-12). The state district court of appeal affirmed the denial of relief on this ground and on the grounds discussed below. *Dexter v. State*, 22 So. 3d 547 (Fla. 2d DCA 2009)(table). Dexter has not shown that the state courts' findings were "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).

## DISCUSSION

Because of the deference due the state court's findings of fact and conclusions of law, the state courts' determination of Dexter's claims largely governs review of those same claims. Consequently, in considering the reasonableness of the state courts' determinations, the review of Dexter's claims includes a recitation of the pertinent state court analysis.

## GROUND NINE

Dexter alleges trial counsel was ineffective for failing to interview and call Dexter's girlfriend, Cassandra Thomas. Specifically, Dexter contends "[h]ad counsel called 'eye witness' Cassandra Thomas she would have testified that Petitioner (as his passenger in the vehicle) didn't attempt to run over Off. Klemkosky or his K-9 as they were clearly outside the car's path. And because her 'credible' testimony would've underminded [sic] the officers, and prevented Petitioner from having to testify, the outcome of the trial would've been different." (See Petition, Doc. 1, p. 8). This issue was raised in ground nine of Dexter's Rule 3.850 motion and resolved after a full and fair evidentiary hearing. The court's final order states in relevant part:

> During the evidentiary hearing, the Defendant testified that his trial counsel, Mr. R. Tracy Lee, an attorney whom he privately retained two weeks before his trial, knew about his then-girlfriend Cassandra Thomas but did not want to call her as a witness. (Exh 12: Evidentiary Hearing transcript at pp. 11-14, 18, 23-24).[2] According to the Defendant, Mr. Lee did not explain why he did not want to call Ms. Thomas as a witness. (Id. at p. 18). The Defendant insisted that Mr. Lee did not interview or talk to Ms. Thomas about the case. (Id. at p. 14). The Defendant testified that there was a white picket fence on the left side of the house that he was leaving on the evening of April 19, 2004. (Id. at p. 8). He further testified to seeing a police officer on the other side of that fence. (Id. at p. 9). The Defendant, who testified in his own trial, also complained that Mr. Lee did not prepare him to testify and that he did not even know that Mr. Lee was going to call him to testify. (Id. at pp. 16, 20). The Defendant admitted that he had

---

[2] Exhibit 12 is the evidentiary hearing transcript and page number were substituted in the state court order for ease of reading.

probably met with Mr. Lee three times during the approximately two week period before his trial. (Id. at pp, 30-31).

Mr. Lee was called by the State to testify. Mr. Lee has been an attorney and licensed by the Florida Bar for approximately 13 years. (Id. at p. 49). He had no independent recollection of speaking with Cassandra Thomas, but did remember that she came to his office at some point. (Id. at p. 57). Notably, although Mr. Lee had no independent recollection of speaking with Cassandra Thomas, both Ms. Thomas and the Defendant testified that Mr. Lee had met with her and was aware of the substance of her proposed testimony. (Id. at pp. 25, 38-39). Mr. Lee also testified that, at the time of the trial, he believed that the Defendant was alone in his vehicle at the time of the events for which he was convicted. (Id.). He could not recall whether he was even aware of her proposed testimony, or whether the Defendant asked him to call her as a witness, much less whether or not he considered putting her on the stand. (Id. at p. 52). When questioned about advising the Defendant to testify at his own trial, Mr. Lee did not have an independent recollection of whether he spoke to the Defendant about taking the stand. (Id. at p. 53). Mr. Lee further testified that he would advise any criminal client of their Fifth Amendment right not to testify. (Id.). Because of the credibility issues inherent in this case, Mr. Lee testified that he would have spoken with the Defendant about the importance of testifying. (Id. at pp. 53-54). Moreover, Mr. Lee testified he could tell from reading the transcripts—specifically the Defendant's responses—that he had prepared the Defendant prior to calling him to the stand. (Id. at p. 54).

The defense also called Ms. Cassandra Thomas to testify, and she indicated that, as the Defendant's girlfriend, she was the one who paid the retainer to Mr. Lee. (Id. at p. 38). She testified that she had spoken with Mr. Lee and told him everything that happened on the evening of April 19, 2004. (Id. at p. 39). When questioned about the events of April 19, 2004, she testified that she was in the Defendant's vehicle that evening, saw a police officer walking behind a fence that ran all the way around the yard, and also heard a police officer order the Defendant to stop because he was under arrest. (Id. at pp. 33- 34). Ms.Thomas also testified that she only saw one police officer and that she did not see the K-9 dog until the police arrested the Defendant at his mother's house.(Id. at pp. 42, 34). Ms. Thomas further testified that the police officer and fence that she saw were on the driver's side of the Defendant's vehicle. (Id. at pp. 35-36). Ms. Thomas testified that during the Defendant's flight from the police, and upon her request, the Defendant stopped his vehicle long enough to let her out. (Id. at p. 43).

. . .

In ground nine, the Defendant contends that his counsel was ineffective for failing to interview and call Cassandra Thomas as a witness. In addition to alleging that Ms. Thomas was available to testify, the Defendant claims that she

"would have testified that although the Defendant ignored the officer's orders to stop, [the Defendant] got into his vehicle and backed straight out and proceeded toward his mother's apartment." The Defendant further alleges that Ms. Thomas would have testified "that the Defendant unequivocally did not attempt and/or come close to the officer or his K-9. And for the officer to suggest that he was imminently in fear of his life, was contrived, as the officer and K-9 were clearly outside the path of the Defendant's vehicle." Lastly, the Defendant argues that Ms.Thomas' testimony "would have undermined the veracity of [Officer Klemkosky's] trial testimony, thus providing the jury with a reasonable doubt that the Defendant committed the crimes charged."

The Defendant has stated a facially sufficient claim with regard to defense counsel's alleged failure to call this witness to testify at trial. He has alleged: (1) the identity of the witness; (2) her proposed testimony; (3) how the omission of that testimony allegedly prejudiced him; and (4) that the witness was available to testify at trial. [footnote omitted] Nevertheless, the Court rejects the Defendant's claim. As noted previously, it is the defendant's burden to show that his counsel's performance was deficient and he was prejudiced as a result. [footnote omitted]. A failure to call witnesses may constitute ineffective assistance of counsel when the defendant proffers the substance of the witnesses' testimony and the witnesses may have been able to cast doubt on the defendant's guilt. [footnote omitted]. In the instant action, the Defendant failed to show that Ms. Thomas' testimony would have cast doubt on his guilt. Rather, as explained below, Ms. Thomas' proposed testimony apparently pertains to a separate police officer than the one for which the Defendant was charged with aggravated assault on a law enforcement officer for almost hitting with his vehicle. Since Ms. Thomas' proposed testimony does not appear to pertain to Officer Klemkosky, it is highly improbable that it "would have undermined the veracity of" Officer Klemkosky's trial testimony.

There are several weaknesses with Ms. Thomas' proposed testimony. First, Ms. Thomas was never questioned by any of the police officers involved in arresting the Defendant. She was not referred to by any other witness at trial. The Defendant was purportedly extremely afraid of the police and desperate to flee, yet he stopped to let Ms. Thomas out of the vehicle. Even the Defendant's own defense counsel believed that the Defendant was alone in his vehicle on the night in question. These factors lead the State attorney to question whether Ms. Thomas was truly present on the night in question.

Regardless, it appears that Ms. Thomas' proposed testimony regarded an officer other than Officer Klemkosky, for whom the Defendant was charged with aggravated assault on a law enforcement officer. According to her testimony at the evidentiary hearing, the only officer that Ms. Thomas saw was behind a fence that "ran all the way around the yard" and was located on the driver's side of the vehicle. At trial, testimony indicated that Officer Klemkosky was walking down the

driveway with his K-9 dog, certainly within the confines of the yard and, according to Officer Jeff Pritchett's testimony, was positioned just to the passenger's side of the vehicle when the Defendant almost hit him with his car. (Exh 20: Vol. 2: T 46, 48). Thus, it appears that Ms. Thomas' proposed testimony would have related to one of the other officers at the scene and not to Officer Klemkosky.

Having reviewed the proposed testimony, this Court finds that even if defense counsel had called Ms. Thomas to testify in the Defendant's trial, her testimony would have done little to assist the Defendant's case because, other than stating that she personally saw only one police officer located on the other side of a privacy fence, it offered little to support the defense theory to the specific charge of aggravated assault on Officer Klemkosky, whom several officers' testimony indicates was walking down the driveway when he had to jump out of the way to avoid himself or his K-9 being hit by the Defendant's vehicle. (Exh 20: Vol. 2: T 24, 46, 48). Despite her testimony that she only saw one officer that night, at least five police officers were present that evening and each testified consistently at trial about the events in question. Furthermore, there is not the slightest indication in the record that the testimony of these officers has been fabricated.

At the risk of redundancy, it appears that Ms. Thomas' proposed testimony was irrelevant to the Defendant's guilt or innocence regarding the charge of aggravated assault on Officer Klemkosky. She essentially testified that she never saw Officer Klemkosky or his K-9 in the driveway. This is understandable since she testified that the Defendant backed out of the driveway rather quickly. (Exh 12 at pp. 37, 41-42). Because she was in the front passenger seat, her position would have offered little vantage point for her to see Officer Klemkosky in the driveway behind them. (Id. at 33). Moreover, if she never saw Officer Klemkosky, then her testimony concerning whether it appeared that the Defendant was attempting to drive his vehicle toward someone, specifically Officer Klemkosky, is irrelevant, Such testimony certainly does not seem sufficient to outweigh the consistent testimony of the police officers that were present on the night in question, especially the testimony of Officer Klemkosky, who testified that the Defendant looked directly at him and even made eye contact when he was in his car. (Exh 20: Vol. 2: T 25).

Finally, the Court notes that Ms. Thomas most likely would have been vulnerable to cross-examination because of potential bias resulting from her girlfriend/boyfriend relationship with the Defendant. For the above-stated reasons, we conclude that the Defendant has failed to overcome the strong presumption that Mr. Lee acted reasonably in deciding not to call Ms. Cassandra Thomas as a witness at trial. Furthermore, this Court finds that the Defendant was not prejudiced by defense counsel's failure to call Ms. Thomas as a witness. Ultimately, the Court's confidence in the outcome of this proceeding has not been undermined. Thus, this Court denies the Defendant's motion on this ground.

(Exh 13: Order Denying Motion for Post Conviction Relief Following a Limited Evidentiary Hearing at pp. 2-8).

Pursuant to testimony presented at the evidentiary hearing, the state court determined that Ms. Thomas' proposed testimony was irrelevant to Dexter's guilt or innocence regarding the charge of aggravated assault on Officer Klemkosky. Thus, counsel's failure to call Ms. Thomas at trial did not prejudice Dexter, and Dexter failed to carry his burden in establishing ineffective assistance of counsel under the *Strickland* test.

Ground nine does not warrant habeas corpus relief.

## GROUND TEN

Dexter argues trial counsel was ineffective for failing to move for a continuance. Dexter alleges his trial counsel was appointed only eleven days prior to trial, which rendered counsel unable to investigate Dexter's "priors," prepare defense witnesses, interview and call Ms. Thomas, or secure a police training manual on use of force when danger is imminent. Dexter raised this claim in ground eleven of his Rule 3.850 motion. The state court summarily denied this claim for failure to allege prejudice, stating as follows in its February 5, 2008, order:

> Under ground eleven, the Defendant alleges that his trial counsel's failure to move for a continuance constituted ineffective assistance of counsel To support this claim, the Defendant points out that "trial counsel was appointed to represent the Defendant on February 14, 2005, as trial was scheduled for February 25, 2005." The Defendant then alleges that "when reviewing the record, it became abundantly clear that trial counsel was unprepared. The Defendant further claims that "counsel's unpreparedness was demonstrated during direct examination of the defendant when he opened the door to the specific nature of his prior record; the incoherent testimony of the defendant and his mother; both of whom apparently were not effectively prepared to testify; the failure to interview and present the testimony of [Ms.] Thomas; and the failure to elicit from Officer M. Klemkosky why deadly force was not employed when his life was purportedly in danger." Lastly, the Defendant alleges that "but for counsel's failure to file a motion for continuance ... there is a sufficient probability that the outcome would

have been different, in that, the omissions set forth above would not have occurred."

> The burden of proof is on the Defendant to show entitlement to relief by stating specific facts and showing actual prejudice, not just by making general, conclusory allegations. The Florida Supreme Court "has repeatedly held 'conclusory allegations are insufficient to warrant relief' on an ineffective assistance of counsel claim." In the present case, the Defendant has failed to show how the outcome would have been different. As a result, this Court's confidence in the outcome is not undermined by defense counsel's failure to move for a continuance. Thus, the Defendant has not established prejudice, and his ineffective assistance of counsel claim must fail as to this ground.

(Exh 11: Order Denying Motion for Post Conviction Relief in Part; Order Granting Limited Evidentiary Hearing at p. 16. (footnotes omitted).

The state court's decision was reasonable inasmuch as Dexter's allegations were general and conclusory, with no showing of prejudice. Again, Dexter fails to meet the *Strickland* two-prong test.

Ground ten does not warrant habeas corpus relief.

### GROUND ELEVEN

Finally, Dexter alleges he was denied his Sixth Amendment right to effective counsel and a fair trial because of cumulative errors. This claim was denied after an evidentiary hearing. The state postconviction court, quoting *Suggs v. State*, 923 So. 2d 419, 441 (Fla. 2003) (citing *Bryan v. State*, 748 So. 2d 1003, 1008 (Fla. 1999)), stated that "a claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges." (Exh. 13 at p. 12). Having found no individual error in any of his other grounds, the court found no merit in the claim of cumulative error, and declared the court's confidence in the outcome of Dexter's case was not undermined by any of Dexter's allegations. (Id.)

The state court's decision is objectively reasonable. Because Dexter has failed to establish that the violations he alleges were errors, they cannot support a cumulative error claim. *See United States v. Murray*, 2005 WL 3046549, *4 (11th Cir. Sept. 27, 2005) (unpublished). *See also, Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987)(petitioner could not obtain habeas relief through aggregation of individual meritless claims he had averred; twenty times zero is zero); *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998)("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."), *cert. denied,* 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 362 (1999). Moreover, the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. Thus, the judgment of the Florida courts is not contrary to any Supreme Court decision so as to warrant relief under the AEDPA.

Ground eleven does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Petitioner Dexter's petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Petitioner Dexter and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 12, 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Demetrice Dexter